REICH REICH & REICH, P.C.
Attorneys for Debtor
235 Main Street, 4th Floor
White Plains, New York 10601
(914) 949-2126
By: Lawrence R. Reich (LR-9337)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
In re:

       **REGGIE PINK PROPERTIES, LLC,**

Chapter 11
Case No.
10-22560(RDD)

               Debtor.
-------------------------------------X

## CHAPTER 11 PLAN OF LIQUIDATION

Reggie Pink Properties, LLC (the "Debtor") hereby proposes the following Chapter 11 Plan of Liquidation ("Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

### ARTICLE I
### DEFINITIONS

Unless the context requires the following terms shall have the following meanings ascribed to them in this Plan:

1.1 **"Administrative Claim"** means a claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such claim.

1.2 **"Administrative Expense"** means any cost or expense of administration of this case, other than Bankruptcy Fees,

1

allowable under Sections 503(b), 330 or 331 of the Bankruptcy Code.

     1.3  **"Allowed Claim"** means a claim against the Debtor that has not been disallowed pursuant to a Final Order and is not a disputed claim and (i) with respect to which a Proof of Claim has been timely filed with the Clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

     1.4  **"Available Cash"** means the sum of cash remaining in the Debtor's estate after payment of all claims having priority over Unsecured Claims and Deficiency Claims.

     1.5  **"Bar Date"** means any date set by Order of the Bankruptcy Court subsequent to which a Proof of Claim or Proof of Interest is not timely filed.

     1.6  **"Cash Collateral"** means all rents collected from tenants at the Property since the commencement of this case which are encumbered by Valley National Bank, Wilber National Bank and the United States Small Business Administration in accordance with their assignments of lease and rents pursuant to 11 U.S.C. §363 of the United States Bankruptcy Code.

     1.7  **"Cash Collateral Order"** The order of the Bankruptcy Court, approving the use of Cash Collateral by the Debtor and the Receiver.

1.8 **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to Article 3 of the Plan.

1.9 **"Confirmation"** means the entry of the Confirmation Order.

1.10 **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court provided that the Confirmation Order becomes a Final Order.

1.11 **"Confirmation Order"** means an Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code in form and substance reasonably satisfactory to the Debtor.

1.12 **"Debtor"** means Reggie Pink Properties, LLC.

1.13 **"Deficiency Claim"** means, unless the holder thereof elects treatment in accordance with Section 1111(b)(2) of the Bankruptcy Code and Bankruptcy Rule 3014, that portion of an Allowed Claim that exceeds the value of all property in which the Estate has an interest that is subject to a lien securing such Allowed Claim.

1.14 **"Disbursing Agent"** means any Entity designated in the Confirmation Order to make distribution in accordance with the terms of the Plan.

1.15 **"Effective Date"** means the first Business Day after entry of the Confirmation Order.

1.16 **"Estate"** means the estate created on the Petition Date pursuant to Section 541 of the Bankruptcy Code.

1.17 **"Executory Contract"** means an executory contract within the meaning of Section 365 of the Bankruptcy Code.

1.18 **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

1.19 **"Interest"** means the rights of the sole member of the Debtor, Leslie Pink Dessauer.

1.20 **"Petition Date"** means March 23, 2010, the date on which this case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code by the Debtor.

1.21 **"Professional"** means all professionals employed by the Debtor or a Committee, if any, under Section 327 of the Bankruptcy Code pursuant to a Final Order.

1.22 **"Professional Fees"** means compensation for services rendered, and reimbursement of expenses incurred, by Professionals, as awarded by Final Order following application, in accordance with Sections 330 and 331 of the Bankruptcy Code.

1.23 **"Proof of Claim"** means a proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.24 **"Property"** means the real property and improvements thereon located at 300 Central Avenue, White Plains, New York 10606.

1.25 **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interest in such Class.

1.26 **"Purchaser"** means the person or entity that is the successful purchaser of the Property which is being sold under this Plan.

1.27 **"Receiver"** means Vincent Rippa, Esq. who was appointed on July 15, 2009 by New York State Supreme Court Justice Nicolai to collect rents during the pendency of pre-petition foreclosure action commenced by The Park Avenue Bank, which has been succeeded by Valley National Bank.

1.28 **"Schedules"** mean the schedules of assets and liabilities and the filed by the Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.29 **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to Section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Estate has an interest to the extent of the value of the claim holder's interest in the Estate's interest in

such property as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.30 **"Transfer Taxes"** means any and all stamp taxes or similar taxes, if and as applicable.

1.31 **"Unsecured Claim"** means an Allowed Claim, including any Deficiency Claim, that is not an Administrative Claim, a Bankruptcy Fee, a Priority Tax Claim or a Secured Claim.

1.32 **"Unexpired Lease"** means an unexpired lease within the meaning of Section 365 of the Bankruptcy Code.

### ARTICLE II
### DESIGNATION OF CLAIMS AND INTERESTS

All claims and Allowed Interests, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1:** shall consist of the Allowed Secured Claim of the first mortgage holder on the Property.

**Class 2:** shall consist of the Allowed Secured Claim of the second mortgage holder on the Property

**Class 3:** shall consist of the Allowed Secured Claim of the third mortgage holder on the Property

**Class 4:** shall consist of all Allowed General Unsecured Claims and Deficiency Claims.

**Class 5:** shall consist of the holder of the Allowed Interest in the Debtor.

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified.

### ARTICLE III
### TREATMENT OF CLAIMS UNDER THE PLAN

3.1 **Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction, release and discharge of their respective claims against the Debtor.

a)    Allowed Administrative Claims other than Claims of Professionals: These Allowed Claims shall be paid pursuant to the terms of the Cash Collateral Order.

b)    Allowed Claims of Professionals: Allowed Claims of professionals retained pursuant to Section 327 of the Bankruptcy Code shall subject to the terms of the Cash Collateral Order, and be paid from Cash Collateral in an amount not to exceed $50,000.00 upon allowance by the Court pursuant to Section 330 of the Bankruptcy Code.

3.2   Class 1, 2 & 3 Secured Claims shall be paid in the order of their priority as liens from Available Cash after the sale of the Property at the Public Auction sale to be conducted at the Confirmation Hearing.  Any Secured Claim not paid in full as aforesaid shall be treated as a Deficiency Claim pursuant to Class 4.

3.3   Class 4: Class 2 Unsecured Claims and Deficiency Claims.  In full satisfaction, release and discharge of the Unsecured Claims and Deficiency Claims against the Debtor, the

holder of an Unsecured Claim or a Deficiency Claim shall receive payment equal to its Pro Rata share of Available Cash.

3.4    Class 5: Class 3 Allowed Interests.  On the Effective Date, the Allowed Interests in the Debtor shall be cancelled.

## ARTICLE IV
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1    **Assumption and Assignment of Executory Contracts and Unexpired Leases.**  On the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code, except for the lease of Bruni & Campisi Plumbing & Heating, Inc., the tenant at the Property.

4.2    **Rejection Claims.**  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to Section 4.1 of the Plan shall be treated as Unsecured Claims.

4.3    **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Section 4.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such claim, in which event no Proof of Claim with respect to such claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final

Order), or (ii) the Confirmation Date.  Any such claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or the Property.

## ARTICLE V
## IMPLEMENTATION OF THE PLAN

5.1  Implementation.  The Debtor shall take all necessary steps and perform all necessary acts to consummate the terms and conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

5.2  **Sale of Property.**  In order to fund the distributions under the Plan subsequent to the Confirmation Date from other than Cash Collateral, the Property shall be sold free and clear of all claims pursuant to 11 U.S.C. §§1123(a)(5)(D) and (b)(4) at the Public Action Sale to be conducted at the Confirmation Hearing.

5.3  **Public Auction Sale Procedures**

A Public Auction Sale, as defined below, which will be held in conjunction with the Confirmation Hearing in open court, shall be based upon pre-qualifying bidders which have submitted "qualifying bids" (as defined in the Bidding Procedures set forth below and in the Plan).  The Debtor shall give all creditors

notice of the Public Auction Sale. This notice is intended to insure that these parties are aware of the requirements necessary to make a qualified bid for the Property.

In order to generate the most exposure for the Public Auction Sale the Debtor has, pursuant to order of the Court, dated May 14, 2010, retained Rand Commercial Services ("Rand"), 1 North Broadway, Suite 1203, White Plains, New York 10601, to market the Property. The Receiver will pay for from funds on hand pursuant to the Cash Collateral Order the costs associated with publishing the notice of the Public Auction Sale in a regional newspaper designated by the Court to maximize the exposure of the Public Auction Sale. Rand will be paid its commissions as, if and when earned pursuant to the Brokerage Agreement between the Debtor and Rand from the proceeds of the Public Auction Sale.

The Public Auction Sale which will be held immediately following the Confirmation Hearing, the sale of the Property shall occur on or before September 15, 2010. Should a sale of the Property not occur on or before September 15, 2010 then, after giving the Debtor a 14 day written demand to cure, Wilber, Valley and SBA may proceed to assert their respective rights, without limitation, pursuant to 11 U.S.C. §§ 361, 362(d), and 363(e) to demand and/or move for additional adequate protection and/or relief from the automatic stay. The Public Auction Sale is based upon pre-qualifying bidders which have submitted "qualifying bids" (as defined below). The Debtor will seek

approval of the following terms and conditions for the sale

("Bidding Procedures"):

(a)   the Public Auction Sale of the Property will be
      conducted in open court at the Confirmation
      Hearing upon the following terms and conditions
      ("Public Auction Sale");

(b)   to be considered by the Debtor, an offer for the
      purchase of the Property must be a "Qualified
      Competing Bid" made by a "Qualified Competing
      Bidder" as provided herein;

(c)   a Qualified Competing Bid shall consist of a
      timely and unconditional offer for the purchase
      of the Property made by a Qualified Competing
      Bidder in accordance with the terms hereof and
      accompanied by a deposit as provided for herein;

(d)   an offer for the purchase of the Property must be
      submitted by a party which demonstrates a
      financial ability to consummate the purchase of
      the Property ("Qualified Competing Bidder");

(e)   each offer must be served upon the Debtor's
      counsel, Reich Reich & Reich, P.C., 235 Main
      Street, Suite 450, White Plains, New York 10601,
      accompanied by evidence satisfactory to the
      Debtor of the willingness and financial ability
      of the Qualified Competing Bidder to consummate
      the transaction;

(f)   each Qualified Competing Bid must be served upon
      the Debtor's counsel, Reich Reich & Reich, P.C.,
      235 Main Street, Suite 450, White Plains, New
      York 10601 so as to be received no later than ten
      (10) business days prior to date scheduled by the
      Court for the Confirmation Hearing;

(g)   each Qualified Competing Bidder making a
      Qualified Competing Bid must deliver to the
      Debtor's counsel, Reich Reich & Reich, P.C., 235
      Main Street, Suite 450, White Plains, New York
      10601, at the time of making such Qualified
      Competing Bid, a deposit in an amount equal to at
      least 10% of its Qualified Competing Bid
      ("Deposit");

(h)   Deposits shall be made in immediately available
      funds to the order of Reich Reich & Reich, P.C.,
      as attorneys for Reggie Pink Properties, LLC

(cashier's check, certified check, irrevocable letter of credit, wire transfer or cash);

(i)    if a Qualified Competing Bidder becomes the Purchaser, its deposit shall be deemed to be non-refundable and shall be forfeited to the Debtor's Estate if such Purchaser fails to close for any reason whatsoever;

(j)    if a Qualified Competing Bidder does not become the Purchaser or the Backup Bidder (as defined below), its deposit shall be returned to it within three business days after the conclusion of the Public Auction Sale, *provided however*, that the deposit tendered by the Backup Bidder shall be held by the Debtor's counsel until three (3) business days after the closing of the sale to the successful bidder unless the Debtor indicated its intention to close on the Backup Bid in which case the Backup Bidder's deposit shall be credited to the purchase price of forfeited to the Debtor as liquidated damages as the case may be;

(k)    a Qualified Competing Bid must contain an irrevocable offer to purchase the Property on the terms set forth in the form of Purchase Agreement annexed to the Plan as Exhibit A;

(l)    a Qualified Competing Bid must not be contingent upon either financing or the conduct or results of any due diligence investigation;

(m)    a Qualified Competing Bid must provide for a closing date no later than thirty days after entry of the Confirmation Order with time being of the essence as against the Purchaser;

(n)    at the Debtor's reasonable discretion any Qualified Competing Bid made by any Qualified Competing Bidder which does not attend the Public Auction Sale may be treated as waived and revoked;

(o)    at the time and place of the Public Auction Sale, if one or more Qualified Competing Bids have been timely submitted, and neither wishes to submit a revised, higher and better bid on the record, the highest and best Qualified Competing Bid and such bidder shall be deemed to the Purchaser;

(p)     at the time and place of the Public Auction Sale
        if one or more Qualified Competing Bids have been
        timely submitted, the Debtor shall conduct an
        Public Auction Sale if one or more Qualified
        Competing Bids have been timely submitted, Bidder
        or Bidders that has or have submitted a Qualified
        Competing Bid or Bids;

(q)     the minimum opening bid at the Public Auction
        Sale shall not be less than the amount of
        $5,000,000.00 (Five Million Dollars);

(r)     subsequent bids made on the record at the Public
        Auction Sale shall be in minimum increments of
        $25,000.00 (Twenty Five Thousand Dollars);

(s)     at such time as it appears to the Debtor, in the
        exercise of its reasonable discretion, that none
        of the Qualified Competing Bidders present at the
        Public Auction Sale are prepared to advance the
        bidding the Debtor shall (after giving fair
        warning on the record to those entities present)
        close the bidding on the record and the entity
        which immediately prior to the close of the
        bidding shall have submitted the highest and best
        offer for the purchase of the Property shall be
        declared the successful Purchaser subject to the
        confirmation order of the Bankruptcy Court, which
        order approves the sale;

(t)     The Purchaser shall be bound by all of the terms
        of the Plan (as such terms, including those with
        respect to the purchase price, shall have been
        modified by the terms of such Purchaser's winning
        bid) and by the purchase agreement annexed hereto
        as Exhibit A;

(u)     The Qualified Competing Bid which is second
        highest at the Public Auction Sale shall be
        designated as the "Backup Bid" and the second
        highest Qualified Competing Bidder as the "Backup
        Bidder" and the Debtor shall be authorized to
        close on the sale, *provided however*, that the
        Debtor shall give the Backup Bidder no less than
        ten (10) calendar days notice of the successful
        bidders failure to close and the Proponent's
        intention to close on the Backup Bid; and

(v)     The Purchaser of the Property shall be deemed a
        purchaser in good faith of the Debtor's Property
        and is entitled to all of the protections
        afforded by 11 U.S.C §363(m).

Notwithstanding any of the foregoing, Wilber National Bank, Valley National Bank and the United States Small Business Administration (hereinafter collectively the "Lenders") automatically shall be considered a Qualifying Competing Bidder and shall be exempt from the deposit requirements set forth above. The Lenders reserve their rights to submit a credit bid at any time on or before the Public Auction Sale in accordance with Section 363(k) of the Bankruptcy Code.

5.4 **Transfer of Assets.** The Property shall be transferred to Purchaser upon the terms and conditions set forth in the purchase agreement annexed hereto as Exhibit A.

5.5. **Transfer Taxes.** (a) Pursuant to Section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a), if any, shall not be subject to any state, local or federal law imposing sales tax.

5.6 **Cooperation of the Debtor.** The Debtor and its Interest Holder shall, at all times, reasonably cooperate with the Purchaser, and any of their successors and assigns.

5.7 **Vesting of Assets.** Except as otherwise provided in the Plan of Property shall vest in the Purchaser on the Effective Date free and clear of all liens, claims and encumbrances, including, but not limited to the claims of real estate brokers, and any and all liens, claims and encumbrances (other than usual and customary encumbrances such as utility easements and the

like) that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

5.8 **Funding.** Except as set forth elsewhere in the Plan all payments required to be made under the Plan shall be made by the Disbursing Agent and shall be funded from the proceeds of the sale of the Debtor's Property and Cash Collateral funds on hand with the Receiver, subject to his final accounting.

5.9 **Dissolution of the Debtor.** As soon as practicable after the closing of the sale of the Debtor's Property under this Plan the Debtor shall be dissolved in accordance with the applicable non-bankruptcy law.

5.10 **Execution of Documents.** (a) On the Effective Date the Debtor, and any necessary party thereto, shall execute, release and delivery all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b) Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any lien, claim or encumbrance (including, any lien, claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of Article VI of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for

filing and recordation, and the Confirmation Order shall expressly so provide.

5.11 **Filing of Documents.** Pursuant to Section 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any lien, claim or encumbrance not expressly preserved by the Plan.

### ARTICLE VI
### PROVISIONS GOVERNING DISTRIBUTIONS

6.1 **Disbursing Agent.** The Debtor's counsel, Reich Reich & Reich, P.C., shall serve as the Disbursing Agent and shall make all distributions under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan the Disbursing Agent shall be deemed to be an officer of the Debtor with full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

6.2 **Timing of Distributions Under the Plan.** Any payments to be made pursuant to the Plan on account of any non-disputed claim shall be deemed to be timely made if made on or within thirty days following the closing of the Sale of the Property.

6.3 **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve any objection to

any claim or Interest at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, (ii) 60 days after the date proof of such claim or Interest or a request for payment of such claim is filed or (iii) 60 days following the first disbursement date.

6.4 **Prosecution of Objections.** After the Confirmation Date, only the Debtor and the Disbursing Agent shall have authority to file, compromise, withdraw or litigate to judgment objections to disputed claims. The Debtor and the Disbursing Agent shall have the right to litigate to judgment, settle or withdraw any objections to any claim or Interest.

6.5 **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment shall be made with respect to any portion of a disputed claim unless and until all objections to such claim are resolved by Final Order.

6.6 **Distribution After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a disputed claim, the Disbursing Agent shall make distributions, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly disputed claim that has become an Allowed Claim.

6.7 **Investment of Segregated Cash and Property.** To the extent practicable, the Disbursing Agent may invest funds on hand held on account of a disputed claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the

investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code: *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such funds and shall have no liability to any party for any investment made or any omission to invest such funds.

6.8 **Bankruptcy Fees.** All fees and charges assessed against the Debtor under Section 1930 of Title 28 of the U.S. Code shall be paid in full by the Disbursing Agent as required by statute until the closing of this case.

### ARTICLE VII
### INJUNCTION AND EXCULPATION

7.1 **Injunction.** Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold claims against, or Interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the estate which is to be transferred to the Purchaser or distributed to creditors under this Plan.

7.2 **Limitation of Liability.** Neither the Debtor, the Purchaser, nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them shall have or incur any liability to any

18

entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the case or the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing in this Section 7.2 shall limit the liability of Professionals pursuant to DR 6-102 of the Code of Professional Responsibility.

### ARTICLE VIII
### MISCELLANEOUS PROVISIONS

8.1 **Orders in Aid of Consummation**. Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code the Bankruptcy Court may enter one or more orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

8.2 **Compliance with Tax Requirements**. In connection with the Plan the Debtor and, where applicable, the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *providing, however*, that any distributions hereunder shall be not be subject to any federal,

state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

8.3 **Due Authorization by Creditors.**  Each and every creditor which accepts the distributions provided for under the Plan warrants that it is the lawful owner of such claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

8.4 **Amendments.**  The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

8.5 **Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

8.6  **Request for Relief Under Section 1129(b)**.  If the Plan
is accepted by one or more, but not all, impaired Classes of
creditors, the Debtor may request confirmation under Section
1129(b) of the Bankruptcy Code of any Class of creditors, subject
to any modification of the Plan made pursuant to Section 1127 of
the Bankruptcy Code, Bankruptcy Rule 3019.

8.7  **Filing of Additional Documents**.  Except as otherwise
provided in the Plan, on or before the Effective Date, the Debtor
may file with the Court such agreements and other documents as
may be necessary or appropriate to effectuate and further
evidence the terms and conditions of the Plan, and Debtor shall
be responsible for the preparation and filing of any reports
necessary until the entry of a Final Decree.  The Debtor shall
also pay any fees due the U.S. Trustee's Office until entry of a
Final Decree.

8.8  **Successors and Assigns**.  The rights, benefits and
obligations of any entity named or referred to in the Plan shall
be binding on, and shall inure to the benefit of, any heir,
executor, administrator, successor or assign of such entity.

8.9  **Notices**.  All notices and other communications to be
given or made hereunder shall be in writing and shall be deemed
to have been given or made when mailed or as otherwise set forth
herein:

(a)  if to the Debtor to Reich Reich & Reich, P.C.,
235 Main Street, 4th Floor, White Plains, New York 10601;

(b)   if to any creditor or Interest holder at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interest filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address;

(c)   if to any Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

8.10 **Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

8.11 **Other Actions**.  Nothing contained herein shall prevent the Debtor, Interest Holder, or creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

8.12 **Severability**.  In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

9.1 **Retention of Jurisdiction.** Notwithstanding the entry
of the Confirmation Order or the Occurrence of the Effective
Date, until the Case is closed, the Bankruptcy Court shall retain
and have original, but not exclusive, jurisdiction to:

(a) Insure that the Plan is consummated, and to enter
any Order pursuant to Section 1142(b) of the Bankruptcy Code, to
compel the Debtor and any other necessary party, to take such
action and execute such documents to effectuate the Plan;

(b) Consider any modification of the Plan proposed
pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy
Rule 3019;

(c) Allow, disallow, determine, liquidate, classify
or establish the priority, secured or unsecured status of any
claim or Interest, including without limitation, the resolution
of any request for payment of any Administrative Expense, the
resolution of any and all objections to the allowance or priority
of claims or Interests, and the resolution of any adversary
proceeding;

(d) Grant or deny any and all applications for
allowance of compensation or reimbursement of expenses authorized
pursuant to the Bankruptcy Code or the Plan, for any period
ending on or before the Effective Date;

(e) Resolve any motions pending on the Effective Date
to assume, assume and assign or reject any Executory Contract or
Unexpired Lease to which the Debtor is a party or with respect to

which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all claims arising therefrom;

(f)   Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(g)   Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)   Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the case, including, but not limited to any order necessary to enforce the provisions of Article VI of the Plan;

(i)   Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligation incurred in connection with the Plan;

(j)   Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)     Remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)     Issue any injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(m)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(o)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(p)     Enter an order or Final Decree concluding this case.

9.2     **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an order closing this case, the Bankruptcy Court shall retain jurisdiction to reopen this case for the

purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE X
### CONDITION TO THE EFFECTIVE DATE

10.1 **Condition Precedent to Effectiveness.** The Plan shall not become effective unless and until it has been confirmed.

## ARTICLE XI
### CLOSING THE CASE

11.1 **Substantial Consummation.** Until the occurrence of the Effective Date and substantial consummation of the Plan, the Debtor, its property and its creditors shall be subject to further orders of the Bankruptcy Court.

11.2 **Closing the Case.** Upon the substantial consummation of the Plan, the Debtor shall expeditiously move for the entry of a final decree closing the case and such other relief as may be just and appropriate.

Dated: White Plains, New York
        June 18, 2010

REGGIE PINK PROPERTIES, LLC

By: _____
    Leslie Dessauer, Managing Member


REICH REICH & REICH, P.C.
Attorneys for Debtor

By: _____
    Lawrence R. Reich (LR-9337)
    235 Main Street, 4th Floor
    White Plains, NY 10601
    (914) 949-2126